# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| SABLE NETWORKS, INC. AND SABLE IP, LLC, | ) ) ) |
| Plaintiffs, | ) **Case No. 5:20-cv-00111-RWS** |
| vs. | ) ) ) |
| PALO ALTO NETWORKS, INC., | ) ) |
| Defendant. | ) |

**DEFENDANT PALO ALTO NETWORKS, INC.'S MOTION AND SUPPORTING MEMORANDUM TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

**I.   INTRODUCTION** ............................................................................................................. 1

**II.  ARGUMENT** .................................................................................................................... 2
   A.   LEGAL STANDARD ..................................................................................................... 2
   B.   THIS ACTION COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF CALIFORNIA  3
   C.   THE PRIVATE INTEREST FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER ...................... 4
       1. *THE RELATIVE EASE OF ACCESS TO SOURCES OF PROOF FAVORS TRANSFER.* ............................ 4
       2. *THE AVAILABILITY OF COMPULSORY PROCESS TO SECURE THE ATTENDANCE OF WITNESSES FAVORS TRANSFER.* ................................................................................................................. 8
       3. *THE COST OF ATTENDANCE FOR WILLING WITNESSES FAVORS TRANSFER.* ............................... 9
       4. *ALL OTHER PRACTICAL PROBLEMS THAT MAKE TRIAL OF A CASE EASY, EXPEDITIOUS, AND INEXPENSIVE FAVOR TRANSFER.* ....................................................................................... 11
   D.   THE PUBLIC INTEREST FACTORS FAVOR TRANSFER ........................................................... 11
       1. *THE ADMINISTRATIVE DIFFICULTIES FLOWING FROM COURT CONGESTION IS NEUTRAL.* .......... 11
       2. *LOCAL INTEREST IN HAVING LOCALIZED INTERESTS DECIDED AT HOME FAVORS TRANSFER.* .... 12
       3. *THE FAMILIARITY OF THE FORUM WITH THE GOVERNING LAW PUBLIC INTEREST FACTOR IS NEUTRAL.* ................................................................................................................. 13
       4. *THE AVOIDANCE OF UNNECESSARY PROBLEMS OF CONFLICT OF LAWS PUBLIC INTEREST FACTOR IS NEUTRAL.* ............................................................................................................. 13

**III. CONCLUSION** ............................................................................................................. 14

i

# TABLE OF AUTHORITIES

**Cases**

*AGIS Software Development LLC v. HTC Corp.*, No. 2:17-CV-00514-JRG, 2018 WL 4680557 (E.D. Tex. Sep. 28, 2018) .................................................................................................. 2

*Astute Tech., LLC v. Learners Digest Int'l. LLC*, Case No. 2:12-CV-689-WCB, 2014 WL 12596468 (E.D. Tex. April 28, 2014) ..................................................................................... 13

*Cooktek Induction Sys., LLC v. I/O Controls Corp.*, No. 4:15-cv-548-ALM, 2016 WL 4095547 (E.D. Tex. Aug. 2, 2016) ........................................................................................... 11

*DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 6:13-CV-919-JDL, 2014 WL 6847569 (E.D. Tex. Nov. 7, 2014) ................................................................................................................... 11

*Fujitsu Ltd. v. Tellabs, Inc.*, 639 F.Supp.2d 761 (E.D. Tex. 2009).......................................... 4, 12

*Hammers v. Mayea-Chang*, No. 2:19-CV-00181-JRG, 2019 WL 6728446 (E.D. Tex. Dec. 11, 2019) ................................................................................................................................ 6

*In re Acer Am. Corp.*, 626 F.3d 1252 (Fed. Cir. 2010)................................................................. 7

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009)........................................................ passim

*In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) ..................................... 8, 12, 13

*In re Nintendo Co., Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009) .................................................. 3, 9, 10

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) ........................................................ 2

*In re Volkswagen AG,* 371 F.3d 201 (5th Cir. 2004) *("Volkswagen I")* ............................ 3, 10, 11

*In re Volkswagen of Am., Inc.,* 545 F.3d 304 (5th Cir. 2008) (*en banc*) *("Volkswagen II")* . passim

*In re Volkswagen of Am., Inc.*, 566 F.3d 1349 (Fed. Cir. 2009) ("*Volkswagen III*") ..................... 2

*QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650 (E.D. Tex. 2007) ....................................... 14

*Software Rights Archive, LLC v. Google, Inc.*, No. 2:07-CV-511-CE, 2010 WL 2950351 (E.D. Tex. Jul. 22, 2010) ......................................................................................................... 4

*SSL Services, LLC v. Cisco Sys., Inc.*, No. 2:15-cv-00433-JRG-RSP, 2016 WL 727673 (E.D. Tex. Feb. 24, 2016) ......................................................................................................... 5

*TC Heartland LLC v. Kraft Food Group Brands LLC,* 137 S.Ct. 1514 (2017).............................. 4

*Voxpath RS, LLC v. LG Electronics U.S.A., Inc.*, No. 2:10-CV-160-JRG, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012)......................................................................................................... 9

**Other Authorities**

28 U.S.C. § 1400(b) ....................................................................................................................... 4
28 U.S.C. § 1404(a) ..................................................................................................... 1, 2, 10, 14

Pursuant to 28 U.S.C. § 1404(a), Defendant Palo Alto Networks, Inc. ("Palo Alto Networks") respectfully requests an order transferring this action to the United States District Court for the Northern District of California, where an overwhelming majority of relevant witnesses, documents, and evidence is located.

## I.     INTRODUCTION

This is a patent infringement lawsuit brought by Sable Networks, Inc. and Sable IP, LLC (collectively, "Sable") against Palo Alto Networks.[1]

The Northern District of California is a clearly more convenient forum.  Palo Alto Networks' headquarters in Santa Clara, California, houses its engineering research, design, and development departments for its firewall products, including the Accused Products, and also the marketing, sales, operations, product management, and finance departments as to the Accused Products.  All identified material and relevant witnesses and documentary or physical evidence in connection with these departments are located within the Santa Clara, California, headquarters. The source code for the Accused Products is developed, stored, and archived in Santa Clara, California.  The hardware appliances for the Accused Products also are designed and developed in Palo Alto Networks' California headquarters.

In addition, the Northern District of California is a clearly more convenient forum for relevant third-party witnesses—including the named inventors and the prosecuting attorneys of the

---

[1] Collectively, Sable alleges that U.S. Patent Nos. 6,977,932, 7,012,919, 8,085,775, 8,243,593, and 8,817,790 (collectively, the "Asserted Patents") are infringed by the following Palo Alto Networks products:  the PA-Series Appliances with PAN-OS 7.1 and later (PA-200, PA-220, PA-220R, PA-500, PA-800 Series, PA-2000 Series, PA-3000 Series, PA-3200 Series, PA-4000 Series, PA-5000 Series, PA-5200 Series, PA-7000 Series), the VM-Series with PAN-OS 7.1 and later (VM-50, M-100, VM-200, VM-300, VM-500, VM-700, VM-1000-HV), and the PA-7000 Series (including PA-7080, PA-7050, PA-7000-20GQXM-NPC, PA-7000-20GXM-NPC, PAN-PA-7000-100G-NPC-A) (collectively, the "Accused Products").

Asserted Patents, the majority of whom are located within the Northern District of California, and none of which are located in Texas. By contrast, Sable has no genuine ties to the Eastern District of Texas.

Palo Alto Networks therefore respectfully asks the Court to grant this motion and transfer this case to the Northern District of California.

## II.   ARGUMENT

### A.   Legal Standard

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Fifth and Federal Circuits have set forth the standard to be used in deciding motions to transfer venue. *See In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) (*"Volkswagen II"*); *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*") (applying the Fifth Circuit's *en banc Volkswagen II* decision to rulings on transfer motions out of this Circuit);. In *Volkswagen II*, the Fifth Circuit made clear that transfer is appropriate when the transferee forum is "clearly more convenient" than the plaintiff's chosen venue. *Id.*

"Fifth Circuit precedent clearly forbids treating plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citing *Volkswagen II*, 545 F.3d at 314 n.10). Probably the most important inquiry is the location of the evidence in the case, including witnesses and documents. *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009); *AGIS Software Development LLC v. HTC Corp.*, No. 2:17-CV-00514-JRG, 2018 WL 4680557 at *8 (E.D. Tex. Sep. 28, 2018) (stating that the "convenience of the witnesses is probably the single most important factor in a transfer analysis").

2

Under the Fifth Circuit's framework, the threshold question is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) *("Volkswagen I")*. If the transferee district is a proper venue, then the court must weigh the relative conveniences of parties and witnesses as well as the interests of the particular venues in hearing the case. *Id.* In making the convenience determination, the Fifth Circuit considers several private and public interest factors, with no single factor being dispositive. *Id.*

"The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Volkswagen II,* 545 F.3d at 315 (quoting *Volkswagen I,* 371 F.3d at 203). "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id.* (quoting *Volkswagen I,* 371 F.3d at 203). When balancing these factors, the Federal Circuit has instructed "that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

**B.     This Action Could Have Been Brought in the Northern District of California**

As a threshold issue, this case could have been brought in the Northern District of California as venue is proper in that district. Venue in a patent infringement case is proper in the district where the defendant corporation resides or where the defendant has committed the alleged acts of infringement and maintains a regular and established place of business. 28 U.S.C. §

3

1400(b). Palo Alto Networks is headquartered in Santa Clara, California, within the Northern District of California. Declaration of Maya Marcus ("Marcus Dec.") at ¶ 2. Sable's complaint alleges that Palo Alto Networks infringes the Asserted Patents by "design[ing], mak[ing], sell[ing], offer[ing] to sell, import[ing], and/or us[ing]" the Accused Products. *See, e.g.,* Dkt. 1 ¶¶ 85, 105-06, 126-27, 151-52, 172-73. The Accused Products were designed, developed, and tested at Palo Alto Networks' headquarters in Santa Clara, California. Marcus Dec. at ¶ 4. Thus, venue is proper in the Northern District of California. *See TC Heartland LLC v. Kraft Food Group Brands LLC,* 137 S.Ct. 1514, 1521 (2017) (venue is proper where the defendant is incorporated, or where it has committed an act of infringement and maintains a regular and established place of business).

### C.     The Private Interest Factors Weigh Heavily in Favor of Transfer

#### 1.     *The relative ease of access to sources of proof favors transfer.*

"[A]lmost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues." *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F.Supp.2d 761, 767 (E.D. Tex. 2009) (citing *Volkswagen II*, 545 F.3d at 314-15, *inter alia*). This is particularly true in patent infringement cases, where the bulk of the relevant evidence usually comes from the accused infringer. *In re Genentech*, 566 F.3d at 1345 (finding that "the place where the defendant's documents are kept weighs in favor of transfer to that location"); *see also*, *Software Rights Archive, LLC v. Google, Inc.*, No. 2:07-CV-511-CE, 2010 WL 2950351, at *2 (E.D. Tex. Jul. 22, 2010) (stating that "the ease of accessing the defendants' sources of proof weighs more heavily than the ease of plaintiff's proof, because the majority of relevant evidence in patent infringement suits usually comes from the accused infringers"). Although there have been advances in electronic data transfer technologies, the Court must consider the actual location of documents and physical evidence. *See*, *e.g.*, *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents

a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."); *see also*, *SSL Services, LLC v. Cisco Sys., Inc.*, No. 2:15-cv-00433-JRG-RSP, 2016 WL 727673, at *3 (E.D. Tex. Feb. 24, 2016) (noting that "the Federal Circuit has emphasized that the physical location of evidence remains an important consideration in the venue analysis irrespective of the ease with which it can be remotely accessed; else this factor would be 'superfluous'") (citing *In re Genentech*, 566 F.3d at 1345).

Palo Alto Networks is headquartered in Santa Clara, California—located 7.7 miles from the Northern District of California's San Jose courthouse. Marcus Dec. at ¶ 2; Ex. A. Accordingly, the vast majority of its physical and documentary evidence is located in that District. All of Palo Alto Networks' documents relating to the development, manufacturing, sales, and marketing of the Accused Products are kept at Palo Alto Networks' Santa Clara, California, headquarters. Marcus Dec. at ¶ 5. The Accused Products are designed, developed, and tested at Palo Alto Networks' headquarters; the source code for the Accused Products is developed, maintained, and archived there; and samples of the Accused Products are located there. *Id*. at ¶ 4. Documentation (electronic or hard copy) concerning the Accused Products is located at Palo Alto Networks' Santa Clara, California, headquarters, including any technical, packaging, financial, or marketing documents. *Id*. at ¶ 5. Moreover, to the extent any electronic data on the servers in Santa Clara, California, are identified as relevant, this electronic data will need to be accessed and retrieved by Palo Alto Networks' IT employees in Santa Clara, California. *Id*. Each of these sources of information will be highly relevant to any non-infringement position Palo Alto Networks may develop during the course of this litigation and any infringement theory Sable may allege.

Further, all material and relevant employee witnesses with knowledge regarding the Accused Products are located in California, not in Texas. Marcus Dec. at ¶¶ 6-9. Palo Alto

Networks' Santa Clara, California, headquarters houses its technical, marketing, sales, operations, product management, and finance departments relating to the Accused Products, and more than half of its U.S. employees. *Id*. at ¶¶ 3, 5. All of Palo Alto Networks' identified material and relevant witnesses in this case are located in Santa Clara, California, including the following:

- Jesse Ralston, Senior Vice President of Products Network Security: knowledge regarding the design, development, and testing of the Accused Products;

- Glen Gibson, Director, Product Management: knowledge regarding the design, development, and testing of the hardware appliances of the Accused Products;

- Ben Hansen, Senior Finance Manager: knowledge regarding U.S. revenue for the Accused Products;

- Vonnie French, Senior Vice President, Worldwide Operations: knowledge regarding supply chain and manufacturing operational support of the Accused Products; and

- Navneet Singh, Product Marketing Senior Director: knowledge regarding marketing of the Accused Products.

*Id*. at ¶ 8. In other words, all of Palo Alto Networks' identified material and relevant witnesses are housed in the company's Santa Clara, California, headquarters, and no material and relevant witnesses are located in Texas. *Id*. at ¶ 9. And while Palo Alto Networks does have an office and warehouse in Plano, nothing relevant to trial proof is located in Plano. As a result, any documents, witnesses, or evidence that may be located in Plano have no bearing on the transfer analysis. *Hammers v. Mayea-Chang*, No. 2:19-CV-00181-JRG, 2019 WL 6728446, *7-*8 (E.D. Tex. Dec. 11, 2019) (noting that the transfer "inquiry is only focused on evidence that will be used at trial").

6

Based on the location of Palo Alto Networks' documents and witnesses, the inquiry under this factor need not go any further. A transfer is warranted under this factor. Moreover, the location of Sable's witnesses and third-party witnesses also tip significantly in favor of transfer.

Plaintiff Sable has no apparent connection to Texas, and a strong connection to California. According to the Complaint, Sable Networks, Inc. ("Sable Networks") is actually "a corporation organized and existing under the laws of the State of California," while Sable IP, LLC ("Sable IP") is a "Delaware limited liability company with its principal place of business" in Minneapolis, Minnesota. Dkt. 1 ¶¶ 13, 16. Sable Networks has a registered address located within the Northern District of California—in Santa Clara, California. Ex. B. Further, the predecessor company to Sable Networks that was referenced in the Complaint—Caspian Networks, Inc. ("Caspian Networks")—was also a California operating company located in San Jose, California, within the Northern District of California. Ex. C. Accordingly, all of the sources of proof relating to Caspian Networks and Sable Networks appear to be located in California, and Palo Alto Networks is not aware of any Sable witnesses located in Texas. Sable has already retained counsel in California as well. Dkt. 1 p. 45.

Further, the overwhelming majority of the named inventors of the five Asserted Patents reside in the Northern District of California. Ex. D; *see* list in Section C.2, *infra*. None of the named inventors resides in Texas. Exs. D-E. Further, the prosecuting attorneys for the Asserted Patents also reside within the Northern District of California. Ex. F.

Accordingly, because specific sources of proof as well as the vast majority of witnesses and evidence are located within the Northern District of California, this factor weighs heavily in favor of transfer. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) ("the

7

combination of multiple parties being headquartered in or near the transferee venue and no party or witness in the plaintiffs chosen forum is an important consideration") (citations omitted).

>  2.  *The availability of compulsory process to secure the attendance of witnesses favors transfer.*

For this factor, the Court evaluates whether this District or the Northern District of California has subpoena power over non-party witnesses. *See In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009) (district court should have weighed another venue's absolute subpoena power over non-party witnesses to favor transfer); *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (compulsory-process factor "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue"). A venue that enjoys the absolute subpoena power for trial is more convenient than a venue where subpoenas will be subject to motions to quash. *Volkswagen II*, 545 F.3d at 316-17.

Here, the Northern District of California enjoys absolute subpoena power. Nearly ***all*** identified material and relevant non-party witnesses are subject to compulsory process in the Northern District of California. The substantial majority of the named inventors (7 of the 9 living inventors) of the Asserted Patents reside in California, and all but one of these reside within the Northern District of California:

- Faizel Z. Lakhani in San Francisco, California (NDCA);
- John A. McBrayne in San Jose, California (NDCA);
- Gary G. Croke in Milpitas, California (NDCA);
- Surya K. Pappu in Milpitas, California (NDCA);
- Sharad R. Murthy in Menlo Park, California (NDCA);
- Vishnu Natchu in Mountain View, California (NDCA); and
- Tricci Y. So in Oceanside, California (SDCA).

8

Ex. D.  Similarly, the prosecuting attorneys for all of the Asserted Patents, Martine Penilla & Gencarella, LLP and West & Associates, A PC, are located in Sunnyvale, California and Walnut Creek, California respectively, both within the Northern District of California.  Ex. F.  Moreover, any third-party witnesses associated with Sable's predecessor company, Caspian Networks, would likely be located in San Jose, California, as Caspian Networks was located there.

The two remaining living inventors[2]—Scott Hauck of Seattle, WA and Paul Jezioranski of Research Triangle Park, North Carolina—are not within the subpoena power of either this District or the Northern District of California.  Ex. E.  Accordingly, these witnesses do not impact this factor.  *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums.") (citing *In re Nintendo*, 589 F.3d at 1199-200; *In re Genentech*, 566 F.3d at 1346).

Palo Alto Networks is not aware of a single material and relevant non-party witness located in the Eastern District of Texas or within 100-miles of Texarkana, Texas.  Accordingly, the Northern District of California has absolute subpoena power.  This factor heavily favors transfer.

        3.    *The cost of attendance for willing witnesses favors transfer.*

For this factor, the Court "must weigh the cost for witnesses to travel and attend trial" in the Eastern District of Texas versus the Northern District of California.  *Voxpath RS, LLC v. LG Electronics U.S.A., Inc.*, No. 2:10-CV-160-JRG, 2012 WL 194370 at *3 (E.D. Tex. Jan. 23, 2012).  This factor is generally the most important factor in a transfer analysis.  *See In re Genentech*, 566 F.3d at 1343.  This factor is to be analyzed in view of the Fifth Circuit's "100–mile" rule, which

---

[2] The tenth named inventor, Lawrence G. Roberts, died in 2018 in Redwood City, California (NDCA).

9

provides that, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-205.

As discussed in Section II.C.1, *supra*, all of Palo Alto Networks' identified material and relevant witnesses are located in the Northern District of California. None live in or near this District, or in Texas. Palo Alto Networks has specifically identified several employees, all located in Santa Clara, California, who are responsible for the design, development, marketing, sales, finances, and product management of the Accused Products. Marcus Dec. at ¶ 8. These witnesses and their Santa Clara, California, based teams collectively have knowledge regarding the entire life cycle of the Accused Products, from design and development to the end of sale, and are likely to serve as Rule 30(b)(6) corporate representatives and/or trial witnesses for Palo Alto Networks, depending on the issues that arise in this case. These witnesses will have to travel over 1,800 miles (at much greater expense and inconvenience) if the case remains in this District. Ex. G. Accordingly, the Northern District of California is more convenient for all known relevant and material party witnesses.

As identified in Section II.C.2, *supra*, nearly all material and relevant non-party witnesses are also located within the Northern District of California. Specifically, the overwhelming majority of the named inventors of the Asserted Patents and the prosecuting attorneys are located in the Northern District of California. *See id.* Palo Alto Networks is not aware of any material and relevant non-party witness located within the Eastern District of Texas.

Thus, this factor weighs heavily in favor of transfer. *See In re Nintendo*, 589 F.3d at 1198 ("[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no

convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.").

        4.    *All other practical problems that make trial of a case easy, expeditious, and inexpensive favor transfer.*

The fourth private interest factor encompasses "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203. This includes problems "that are rationally based on judicial economy." *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 6:13-CV-919-JDL, 2014 WL 6847569, at *2 (E.D. Tex. Nov. 7, 2014). Prior to Sable filing litigation this year, the patents-in-suit had not been previously litigated in any court. Sable has brought two additional cases in this Court that involve the same Asserted Patents, and in each case the defendant is similarly located in the Northern District of California. *Sable Networks, Inc. v. Fortinet, Inc.*, No. 5:20-cv-00109 (E.D. Tex.); *Sable Networks, Inc. v. Hewlett Packard Enter. Co.*, No. 5:20-cv-00120 (E.D. Tex.). Additionally, this case is in its early stages and therefore there are no practical problems that would deter this Court from transferring this litigation. *Cooktek Induction Sys., LLC v. I/O Controls Corp.*, No. 4:15-cv-548-ALM, 2016 WL 4095547, at *6 (E.D. Tex. Aug. 2, 2016) (finding no practical problems for transfer when the Court had not previously considered any substantive issues nor entered a claim construction order). This factor weighs in favor of transfer.

    **D.**    **The Public Interest Factors Favor Transfer**

        1.    *The administrative difficulties flowing from court congestion is neutral.*

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech,* 566 F.3d at 1347. The Federal Court Management Statistics compiled in March and June of 2020 show that the median time to disposition for civil cases in the Northern District of California was an average of 9.15 months, whereas the average in the Eastern District

11

of Texas over the same timeframe was 9.2 months. Ex. H. Thus, this factor is neutral. Regardless, the Federal Circuit has noted that this factor "appears to be the most speculative" and that "case-disposition statistics may not always tell the whole story." *In re Genentech,* 566 F.3d at 1347 (citation omitted). Accordingly, this factor should not impact the transfer analysis. *See id.* ("Without attempting to predict how this case would be resolved and which court might resolve it more quickly, we merely note that when, as here, several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors.").

       2.  *Local interest in having localized interests decided at home favors transfer.*

This second public interest factor heavily favors transfer. It is widely understood that when there are significant connections between a venue and the events that gave rise to the suit, this factor should be weighed in favor of transfer to that venue. *In re Hoffmann-La Roche*, 587 at 1338 (citation omitted). There may be a strong local interest where "the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *Id*. at 1336.

Here, the Northern District of California has a larger interest than this District in resolving this dispute. Palo Alto Networks is headquartered in the Northern District of California, the research and development of the Accused Products took place in the Northern District of California, and documents and source code regarding the Accused Products are located in the Northern District of California. *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F.Supp.2d 761, 769 (E.D. Tex. 2009) (finding this factor favored transfer where the accused products were designed and developed at the defendant's principal place of business in the transferee forum). All of Palo Alto Networks' expected material and relevant witnesses – the individuals who worked on and continue to work on the Accused Products, and whose work is at issue by Sable's allegations of

12

infringement—are located in the Northern District of California. *In re Hoffmann-LaRoche*, 587 F.3d at 1336 (transferee forum's local interest in the case "remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community"). Sable Networks is—and its predecessor, Caspian Networks, was—also located within the Northern District of California. The vast majority of known third-party witnesses are also located in the Northern District of California, including the overwhelming majority of the named inventors and the prosecuting attorneys of the Asserted Patents. By contrast, this District does not appear to have any interest in this dispute. Moreover, where, as here, the Accused Products are available to consumers equally throughout the country, transfer to the venue with a more genuine stake in the controversy is appropriate. *Volkswagen II*, 545 F.3d at 317-18 (finding that the general availability of a product to consumers in the district did not create a localized interest sufficient to weigh against transfer); *In re Hoffmann-La Roche*, 587 F.3d at 1338.

        3.    *The familiarity of the forum with the governing law public interest factor is neutral.*

Here, the third public interest factor of "the familiarity of the forum with the law that will govern the case," *Volkswagen II*, 545 F.3d at 315, is neutral. Both the Eastern District of Texas and the Northern District of California would be equally capable of applying the patent laws of the United States and each court has an active patent docket and judges who are very experienced with patent lawsuits. *See Astute Tech., LLC v. Learners Digest Int'l. LLC*, Case No. 2:12-CV-689-WCB, 2014 WL 12596468, at *10 (E.D. Tex. April 28, 2014).

        4.    *The avoidance of unnecessary problems of conflict of laws public interest factor is neutral.*

The fourth public interest factor, "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law," *Volkswagen II*, 545 F.3d at 315, is also neutral. Here,

13

it is unlikely that any issues regarding conflict of law will arise, and it is a certainty that application of foreign law will not be required, due to the federal question involved. Further, any substantive issues in the case would be reviewed by the Court of Appeals for the Federal Circuit irrespective of whether the case is heard in this Court or the Northern District of California. Accordingly, this factor is neutral because both courts are fully capable of applying federal patent laws to Sable's infringement claims.[3] *See QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 667 (E.D. Tex. 2007) (finding this factor bears little weight in analyzing whether to transfer the case because the Federal Circuit will review any substantive issues regardless).

## III.   CONCLUSION

Based on the foregoing, Palo Alto Networks respectfully requests that the Court grant its motion to transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

---

[3] In addition to other convenience issues, a transfer to the Northern District of California would also be consistent with public health guidance efforts to limit travel and mitigate the risk of community transmission of COVID-19 during the current pandemic.

14

Dated:  August 24, 2020                                    Respectfully submitted,

*/s/ Melissa R. Smith*

**GILLAM & SMITH LLP**
Melissa R. Smith
(Texas Bar No. 24001351)
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Michelle L. Marriott
Eric A. Buresh
**ERISE IP, P.A.**
7015 College Blvd., Suite 700
Overland Park, Kansas 66211
Phone: (913) 777-5600
Facsimile: (913) 777-5601

**CERTIFICATE OF CONFERENCE**

I conferred via email with Daniel Hipskind and Dorian Berger, counsel for Sable Networks, Inc. and Sable IP, LLC on August 19, 2020 and August 20, 2020 as required under Local Rule CV-7(h) and Plaintiffs Sable Networks, Inc. and Sable IP, LLC oppose this motion.

*/s/ Melissa R. Smith*
Melissa R. Smith

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 24, 2020 a copy of the foregoing document was served upon all counsel of record who are deemed to have consented to electronic service.

*/s/  Melissa R. Smith*
Melissa R. Smith